IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BERKLEY REGIONAL INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CA 14-00493-KD-C |
| | : | |
| TRADEMARK CONSTRUCTION, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**FINDINGS AND RECOMMNDATION TO GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST ALL DEFENDANTS[1]**

This matter came before the Court upon Plaintiff Berkley Regional Insurance Company's ("Berkley") Motion for Default Judgment against Defendants Trademark Construction, Inc., Mill Creek Equipment Company, Inc., and Tomac Company, LLC (collectively, the "Defendants"), (doc. 14), and Berkley's Memorandum in Support, (doc. 20). The Defendants, who have not appeared in this matter, failed to file a response to Berkley's Motion for Default Judgment. For the reasons explained below, and after careful consideration of the filings and relevant law, it is recommended that Berkley's Motion for Default Judgment be **GRANTED** in favor of Berkley and against the Defendants, jointly and severally, for the sum of $478,021.03.[2]

---

[1] This action was randomly assigned to the undersigned as a possible consent case pursuant to the practice of this Court and 28 U.S.C. § 636(c). (See General L.R. 73(c) (effective August 1, 2015) which codifies the Court's practice and supersedes the previous standing order.) Because none of the defendants have appeared and are in default, the parties have not consented to having the issues in this action resolved by a magistrate judge. Accordingly, the Clerk is to reassign this action and refer this Report and Recommendation to the district judge.

[2] A hearing pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure is not necessary. The allegations in the Complaint along with the exhibits attached to the motion for a default judgment and supplemental memorandum

1

I.  **BACKGROUND**

Berkley filed its Complaint for Indemnity and Equitable Relief (the "Complaint") against the Defendants seeking contractual and equitable indemnification for certain losses, costs and expenses sustained as a result of having issued certain surety bonds on behalf of Defendant Trademark Construction, Inc. (the "Principal") and enforcing a General Agreement of Indemnity executed by, among others, the Defendants (the "Indemnity Agreement").  Berkley filed the Complaint against the Defendants on October 23, 2014.  (Doc. 1.)  The Defendants failed to file an Answer or otherwise appear in this lawsuit within the time limits set forth in the Federal Rules of Civil Procedures. The Clerk entered a Default against the Defendants on December 16, 2014.  (Doc. 10.) Berkley has requested that judgment be entered in its favor against the Defendants, jointly and severally, in the amount of $478,021.03, which figure represents the losses, costs and expenses sustained by Berkley as a result of having issued certain surety bonds on behalf of the Principal and enforcing the Indemnity Agreement.  In addition to its Motion for Default Judgment, Berkley has submitted supplemental briefing as further evidence of the fact and amount of the damages it seeks against the Defendants. (Doc. 20).

II.  **JURISDICTION AND VENUE**

Berkley alleges jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a).  The allegations are that Berkley is a citizen of Connecticut, the defendants are citizens of Alabama and the amount in controversy exceeds $75,000.00. The citizenship allegations are accepted as true, having been presented by counsel for the plaintiff pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure which

---

provide a sufficient basis to determine the sum certain sought by the Plaintiff.  *Securities and Exchange Commission v. Smyth*, 420 F.3d 1225, 1231–32 & n. 13 (11th Cir.2005) (where "all essential evidence is already of record," a hearing is generally not required)."

provides that "[b]y presenting to the court a pleading ... an attorney ... certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the factual contentions have evidentiary support". It is also clear that the amount in controversy clearly exceeds the threshold amount.

The Court has also considered the issue of whether personal jurisdiction over the defendants exists in this action. S*ee, e.g.,* Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments, 553 F.3d 1351, 1360 (11th Cir.2008) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served.") (Citation omitted). "The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." Gray Cas. & Sur. Co. v. McConnell Contracting, LLC, No. CIV.A. 11-0184-KD-N, 2012 WL 1145186, at *1 (S.D. Ala. Apr. 5, 2012) (citation omitted).

Berkley alleges that the Principal is a citizen of Alabama and may be served through its Registered Agent, Tomas K. Stanley, in Mobile, Alabama; defendant Mill Creek Equipment Company, Inc. is a citizen Alabama and may be served via its Registered Agent, Larry T. McPherson, in Mobile, Alabama[3]; and defendant Tomac & Company, LLC is a limited liability company,[4] with its principal place of business in Alabama and may be served via its Registered Agent, Thomas K. Stanley, in Mobile,

---

[3] Thomas K. Stanley executed the Indemnity Agreement as President of Mill Creek Equipment Company, Inc. and received service of the Complaint as an officer of this corporation.

[4] All Officers/Members of the LLC are alleged to be citizens of Alabama.

Alabama. The Performance and Payment Bonds were issued by Berkley to bond construction projects to be performed for the University of South Alabama in Mobile County, Alabama ("Dining Facility Project") and the Harrison County [Mississippi] Board of Spuervisors pertaining to the Governmental Complex & Library Project ("Library Project"). The General Agreement of Indemnity was executed by the defendants to indemnify Berkley in the event of non-performance of the Dining Facility Contract and the Library Contract. Therefore, all defendants are amenable to jurisdiction.

Defendants were served with the summons and complaint in November 2014 (docs. 5–7) in Mobile, Alabama. Additionally, Berkley has mailed a copy of the application for entry of default, and motion for default judgment to the defendants at their last known address (docs. 9 & 14, certificates of service). Therefore, defendants have been served with notice of this proceeding and notice of the motion for default judgment.

### III.   FINDINGS OF FACT

#### A.   THE INDEMNITY AGREEMENT

The Defendants executed the Indemnity Agreement, dated September 19, 2006, in favor of Berkley as inducement for Berkley to issue surety bonds on behalf of the Principal. (Doc. 20, Exh. 1) Those surety bonds, which are described in greater detail below, shall be referred to collectively as the "Bonds." Article 1.01 of the Indemnity Agreement obligates the Defendants, jointly and severally, to:

> [E]xonerate, hold harmless, indemnify, and keep indemnified [Berkley] from and against any and all liability arising from any cause of action, claim, cost, damage, debt, demand, expenditure, liability, loss, payment, obligation, or penalty of any kind whatsoever, including without limitation, interest costs court costs, **costs to compromise or settle any claim**, **expert fees**, **investigative costs** and the **fees and expenses of attorneys, accountants and other professionals or service providers** of

any nature whatsoever, whether or not alleged, asserted, awarded, contingent, incurred, potential, threatened, matured or unmatured, and shall reimburse [Berkley] for any payment by it, related to or by reason of: (i) **this Agreement, a Contract or Bonds and/or [Berkley's] procuring or enforcement of the same or the prosecution, investigation or defense of any Claim against or by [Berkley]**; (ii) any loans, credits, advances or monies guaranteed, lent, advanced or extended by [Berkley] from time to time to or for the account of any [Indemnitor]; (iii) [Berkley] having accepted Collateral as security for the obligations of the [Indemnitors] to [Berkley] or the enforcement of [Berkley's] interest therein; (iv) the occurrence of an Event of Default and any prosecution, investigation, defense or settlement of the same by [Berkley]; or (v) any action or inaction by [Berkley] or liability incurred or sustained by [Berkley] in reliance upon representations or statements made by Indemnitors or their attorneys and representatives regarding defenses available to an Indemnitor and/or [Berkley] to claims made against such Bonds (all of the foregoing referred to singly as an "Indemnified Claim" or an "Indemnified Expense" and collectively as an "Indemnified Claim or Expense"). The [Indemnitors] shall also pay to [Berkley] interest on all such payments, from the date thereof, at the maximum legal post-judgment rate permitted by New York law, compounded daily.

(Emphasis added). Article 1.01 of the Indemnity Agreement therefore requires the Defendants to, *inter alia*, indemnify Berkley with respect to all costs, damages, debts, demands, expenditures, liabilities, losses, payments, obligations or penalties of any kind whatsoever, including interest fees, court costs, costs of compromising or settling any claim, expert fees, investigative costs and the fees and expenses of attorneys, accountants and other professionals, sustained in relation to enforcing the Indemnity Agreement or as a result of having issued the Bonds.

Article 1.02 of the Indemnity Agreement further provides, in pertinent part:

To further protect, exonerate and save harmless [Berkley], Indemnitors shall pay over to [Berkley], its successors and assigns, all sums of money which [Berkley] shall pay or cause to be paid or may potentially be liable to pay related to or by reason of an Indemnified Claim; such payment to be made to [Berkley] as soon as [Berkley] notifies Indemnitor to deposit such funds with [Berkley], whether or not [Berkley] established or increased any reserve or shall have paid out such sum or any part thereof or not....

Article 1.02 of the Indemnity Agreement obligates the Defendants to protect, exonerate and save harmless Berkley before Berkley even sustained any losses, costs and/or expenses in enforcing the Indemnity Agreement or as a result of having issued surety bonds on behalf of the Principal.

Article 2.01 of the Indemnity Agreement further allows Berkley to determine whether any claim "shall or shall not be paid, compromised, settled, resisted, defended, prosecuted, tried or appealed."  Under Article 2.01 of the Indemnity Agreement, any such determination by Berkley, absent fraud, is binding on the Defendants.  Finally, Article 2.01 of the Indemnity Agreement provides, in pertinent part, that:

> An itemized statement of payments made by [Berkley] for any of the purposes specified herein, sworn to by an officer of [Berkley] **or** the copies of the checks or drafts for such payments, **shall be prima facie evidence of the liability of the Indemnitors to reimburse [Berkley] such amounts with interest from the date of payment**.

(Emphasis added).  The Indemnity Agreement establishes that an itemized statement of payments made by Berkley, for which it seeks indemnification from the Defendants, sworn to by an officer of Berkley, is prima facie evidence of the fact and amount of the Defendants' liability to Berkley.  Berkley submitted both forms of proof in support of its Motion for Default Judgment against the Defendants.

### B.  THE BONDS

Berkley issued the Bonds on behalf of the Principal in reliance on the Indemnity Agreement.  More specifically, the evidence submitted to the Court indicates that Berkley issued Performance Bond No. 0132441 (the "Dining Facility Performance Bond") and Payment Bond No. 0132441 (the "Dining Facility Payment Bond") (collectively, the "Dining Facility Bonds") on behalf of the Principal in connection with its contract with the University of South Alabama (the "University") to construct the USA New Dining Facility Project (the "Dining Facility Project").  The evidence further

indicates that Berkley issued Performance Bond No. 0132444 (the "Library Performance Bond") and Payment Bond No. 0132444 (the "Library Payment Bond") on behalf of the Principal in connection with its contract with the Harrison County Board of Supervisors (the "County") pertaining to the Governmental Complex & Library Project (the "Library Project").

The Dining Facility Bonds and the Library Bonds, which have already been collectively defined as the "Bonds," are the primary subject of Berkley's Complaint and are the main source of losses, costs and expenses for which Berkley seeks reimbursement from the Defendants. The Principal defaulted with respect to its obligations under the Bonds, resulting in Berkley's receipt of numerous claims from the Principal's subcontractors and suppliers who furnished labor and materials to either or both of the Dining Facility Project and the Library Project (the "Bond Claims"). Berkley has submitted sufficient and valid evidence to the Court that it paid the sum of $710,198.09 under the Bonds in satisfaction of valid Bond Claims.

### C.  DAMAGES

Berkley submitted an Affidavit of Ellen M. Cavallaro (doc. 14-1) in support of its Motion for Default Judgment setting forth the damages sought by Berkley ("Affidavit One"). Berkley also submitted a second Affidavit of Ellen M. Cavallaro (doc. 20-39) in support of its Supplemental Brief to the Motion for Default Judgment ("Affidavit Two"). The Affidavits establish that Ms. Cavallaro is an Assistant Vice President of Surety Claims at Berkley Surety Group, a W.R. Berkley Company and, in that capacity, possesses personal knowledge of the losses, costs and expenses sustained by Berkley for which it seeks reimbursement from the Defendants. Based on the contents of the Affidavits, Berkley's damages can be broken down into three (3) categories: (1) sums

paid under the Bonds to satisfy valid Bond Claims; (2) attorneys' fees and related costs; and (3) consulting fees and related costs.

1. <u>Losses Under the Bonds</u>

Affidavit One contains an itemized chart of the payments Berkley made under the Bonds in satisfaction of valid Bond Claims.  More specifically, Affidavit One identifies every subcontractor and supplier paid by Berkley, the amount paid and the project in relation to which the payment was made.   In Affidavit One, Ms. Cavallaro affirms that Berkley satisfied the valid Bond Claims in good faith and with the reasonable belief that said Bond Claims were due.   Affidavit One therefore constitutes an "itemized statement of payments made by [Berkley]" under the Bonds in accordance with Article 2.01 of the Indemnity Agreement.  In further compliance with Article 2.01 of the Indemnity Agreement, Berkley also submitted to the Court copies of the checks transmitted to the claimants, which checks evidence actual payment and satisfaction of their Bond Claims.  The Affidavits show that Berkley paid $710,198.09 to satisfy the following nine claims submitted under the Dining Facility Payment Bond and nine claims submitted under the Library Payment Bond:

| CLAIMANT | AMOUNT PAID |
|---|---|
| Johnson Controls, Inc. | $24,805.00 |
| Southeast Contractors | $100,299.78 |
| JPO Contractors, Inc. | $293.94 |
| Mobile Glass, LLC | $3,700.14 |
| Gulf Electric | $159,681.59 |
| Doyle Associates | $22,000 |
| National and Local Union 119 & 441, Various Funds & Plans | $96,849.69 |
| Delta Flooring | $5,783.16 |
| Melvin Pierce Painting, Inc. | $12,513.75 |
| Construction Specialties, Inc. | $8,946.00 |
| MAS-CO Inc. | $11,854.13 |

| | |
|---|---|
| Branch Electric | $43,835.01 |
| HDI | $4,723.45 |
| Compton Appliance, Inc. | $88,597.75 |
| Vulcan Interiors | $86,395.56 |
| Glass, Inc. | $13,807.90 |
| Melvin Pierce Painting, Inc. | $25,317.00 |
| Southwest Design & Landscaping | $794.24 |
| Total | $710,198.09 |

The Court therefore finds that the total amount Berkley paid in satisfaction of the valid Bond Claims was $710,198.09, as stated in the Affidavits submitted by Berkley.

Berkley, supported by the Affidavits, has further shown that the damages incurred paying the valid Bond Claims must be offset back contract funds recovered from the University and the County on the Dining Facility Project and the Library Project, respectively. Affidavit Two shows that Berkley received $221,698.13 from the University in contract funds remaining on the Dining Facility Project and $119,787.36 from the County in contract funds remaining on the Library Project. The recovery of these contract funds would offset the total loss incurred under the Bonds by the sum of $341,485.49. In light of the contract funds recovered by Berkley, the Court finds that Berkley sustained a net loss (exclusive fees, expenses and costs) under the Bonds in the sum of **$368,712.60** in good faith and with the reasonable belief that all payments made to satisfy valid Bond Claims were due.

  2.  <u>Legal Fees</u>

The Affidavits contain additional evidence showing that Berkley has paid the sum of $84,225.74 in legal fees in connection with its receipt, review, investigation and resolution of the Bond Claims and enforcing the Indemnity Agreement. Affidavit Two further breaks down Berkley's payment of legal fees by invoice, including payee,

amount of payment and date of payment. Finally, Berkley submitted copies of the invoices for the legal services to the Court, under seal, to allow for judicial review. Affidavit Two clarifies that Berkley retained four law firms to provide legal services in connection with this matter. One law firm, Manier & Herod, P.C., served as the lead counsel for Berkley with respect to all matters involving the Principal, the Bonds and the Bond Claims. Berkley retained additional law firms to protect its interests after a number of subcontractors and suppliers filed lawsuits against Berkley in both Alabama and Mississippi in relation to their Bond Claims. Berkley also retained counsel to assist with the filing of this present lawsuit and the Complaint.

Upon review of the Affidavits and the invoices submitted under seal, it is clear that legal counsel assisted Berkley with reviewing, investigating, denying and/or resolving numerous Bond Claims, defending Berkley in relation to four lawsuits, filed in various jurisdictions, filed by the Bond claimants, procuring bonded contract funds held by the University and the County (which funds offset Berkley's total losses, costs and expenses), making demands on the Defendants to comply with the terms of the Indemnity Agreement, and pursuing Berkley's claims against the Defendants under the Indemnity Agreement in this present lawsuit. In light of the required volume of legal work, the complexity of the issues and the number of players involved in this matter, the Court finds that the legal services provided to and paid by Berkley in the amount of **$84,225.74** were reasonable under the circumstances.

      3.     <u>Consulting Fees</u>

The Affidavits show that Berkley paid $25,082.69 in consulting fees to Nicholson Professional Consulting, Inc. ("Nicholson") in connection with general and specific consulting services Nicholson provided to Berkley on matters involving the Principal, the Bonds and the Bond Claims. Affidavit Two contains specific information on the

date and amount of each payment Berkley made to Nicholson.  As with the legal services invoices, Berkley also submitted Nicholson's invoices to the Court, under seal, for judicial review.   Upon review of the Affidavits and the invoices submitted under seal, the Court finds that the consulting services provided to and paid by Berkley in the amount of **$25,082.69** were reasonable under the circumstances.

## IV. STANDARD OF REVIEW

>The Federal Rules of Civil Procedure establish a two-part process for obtaining a default judgment. Fed.R.Civ.P. 55. If "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" the clerk of court "must enter the party's default." Fed.R.Civ.P. 55(a). After default has been entered, if the "claim is for a sum certain or a sum that can be made certain by computation" the clerk must enter default. Fed.R.Civ.P. 55(b)(1). In all other circumstances, such as here, "the party must apply to the court for a default judgment." Fed.R.Civ.P. 55(b)(2). Also, a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed.R.Civ.P. 54(c).
>
>The Court of Appeals for the Eleventh Circuit has held that although "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact. The defendant, however, is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. Appx. 860, 863 (11th Cir.2007) (per curiam) (citations and internal quotations omitted). Moreover, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint ... actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.* (emphasis omitted). Therefore, [Plaintiff] must establish a "prima facie liability case" against the defendants. *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F.Supp.2d 1353, 1357 (S.D.Ga.2004) (citations omitted).
>
>Also, when assessing default judgment damages, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir.2007). Therefore, when ruling on a motion for default judgment, the Court must determine whether there is a sufficient factual basis in the complaint upon which a judgment may be entered. See *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).

Gray Cas. & Sur. Co., 2012 WL 1145186, at *3-4 (S.D. Ala. Apr. 5, 2012)

V.   **ANALYSIS**

Under the Indemnity Agreement, the Defendants are jointly and severally obligated to indemnify Berkley for, *inter alia*, all damages, costs, losses, expenditures, and payments made by Berkley under the Bonds and in enforcing the Indemnity Agreement. The damages to which Berkley is explicitly entitled include court costs, costs to settle or compromise any claim, expert fees, investigative costs, and the fees of attorneys, accountants and other professionals. The damages sought by Berkley in its Motion for Default Judgment represent those damages, costs, losses, expenditures, and payments made by Berkley under the Bonds and in enforcing the Indemnity Agreement for which it is entitled to indemnification under Article 1.01 of the Indemnity Agreement.

A surety is entitled to reimbursement pursuant to an indemnity contract for payments made by the surety with a good faith belief that it was required to pay, regardless of whether any liability actually existed. *Travelers Cas. & Sur. Co. of Am. v. Thorington Elec. & Const. Co.*, No. 2:09-CV-37-WKW, 2009 WL 4758729, at *2 (M.D. Ala. Dec. 8, 2009); *Frontier Ins. Co. v. Int'l, Inc.*, 124 F. Supp. 2d 1211, 1213 (N.D. Ala. 2000). The Affidavits establish that Berkley satisfied valid Bond Claims in good faith and with the reasonable belief that said Bond Claims were due. Moreover, the Court has found that Berkley sustained a net loss (exclusive fees, expenses and costs) under the Bonds in the sum of $368,712.60 in good faith and that the legal and consulting services provided to and paid by Berkley in the collective amount of $109,308.40 were reasonable under the circumstances.

Berkley has further complied with the proof requirements set forth in Article 2.01 of the Indemnity Agreement by (1) submitting an itemized, sworn statement of its damages, costs, losses, expenditures, and payments and (2) submitting copies of checks

and drafts for such damages, costs, losses, expenditures, and payments, although complying with only one of these requirements would have constituting *prima facie* evidence of the liability of the Defendants to Berkley. Provisions similar to Article 2.01 are common in construction surety indemnity agreements. Other courts have found that a surety's compliance with such similar provisions constitutes *prima facie* evidence of the fact and amount of the indemnitors' liability to the surety. *See, e.g. Liberty Mutual Insurance Co. v. CTS Earthmoving, Inc.*, No. CV12–00089 JMS–KSC, 2012 WL 6704055 (D. Ha. Dec. 4, 2012); *First National Insurance Company of America v. Maxim Construction, Inc.*, No. 3:11–CV–00715–LRH–VPC, 2012 WL 6204293 (D. Nev. Dec. 12, 2012) *Bond Safeguard Insurance Co. v. Ridgeview Development, LLC*, No. 11–cv–03275–WJM–KMT, 2012 WL 4511285 (D. Colo. Oct. 1, 2012); *Great Am. Ins. Co. v. Wayne Evans Auction Co. Inc.*, 4:12-CV-45 CDL, 2012 WL 2154245 (M.D. Ga. June 13, 2012); *Gray Cas. & Sur. Co. v. McConnell Contracting, LLC*, No. 11-0184-KD-N, 2012 WL 1145186 (S.D. Ala. Apr. 5, 2012); *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197 (S.D. Tex. Oct. 5, 2011); *SureTec Insurance Co. v. Cairns Corp.*, No. 8:10–cv–2794, 2011 WL 1061230 (M.D. Fla. March 22, 2011).

## V.    CONCLUSION

Berkley has, therefore, submitted ample evidence to establish the fact and amount of the Defendants' liability to Berkley. Accordingly, the Court has determined that Berkley's Motion for Default Judgment (doc. 14) should be **GRANTED.** It is therefore **RECOMMENDED** that default judgment be entered against the Defendants, jointly and severally, in favor of Berkley, in the amount of $478,021.03.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in

it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 6th day of August 2015.

                                            s/WILLIAM E. CASSADY
                                            **UNITED STATES MAGISTRATE JUDGE**